UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

Capital Foundry Funding, LLC, as assignee
of Quartix Finance Inc.,

                Plaintiff,

v.

DGL GROUP LTD, Ezra Zaafarani and
Mark Nakash,

                Defendants,

-------------------------------------------------------x

Civil Action No.:

## COMPLAINT

    Plaintiff, Capital Foundry Funding LLC ("Plaintiff" or "Capital Foundry"), in its capacity as assignee of Quartix Finance Inc. ("Quartix"), by its attorney, Bodner Law PLLC, as and for its Complaint against the defendants, DGL GROUP LTD ("DGL"), Ezra Zaafarani ("Zaafarani") and Mark Nakash ("Nakash" together with Zaarafani, the "Guarantors" and the Guarantors and DGL, jointly "Defendants"), respectfully alleges and sets forth the following:

### PRELIMINARY STATEMENT

    1.    Capital Foundry was the secured lender to non-party Quartix, a defaulting borrower, and now brings this action as assignee of Quartix against Defendants to recover the amount of $1,362,952.24, plus interest earned and accrued against the advances made by Quartix to DGL, and reasonable attorneys' fees and expenses, under the subject Agreement (defined below) and Guaranty (defined below), respectively.

    2.    Quartix made advances to DGL to finance DGL's payments of certain of its suppliers' invoices.

    3.    DGL unconditionally promised to repay the amounts advanced by Quartix to DGL on the maturity dates chosen set on the Platform (defined below).

4. Each Guarantor signed a personal guaranty to guaranty repayment of the amounts owed to Quartix by DGL.

5. Defendants, however, have failed and refused to repay Plaintiff, as assignee of Quartix, as required under the Agreement and the Guaranty.

## JURISDICTION AND VENUE

6. Capital Foundry is, and all times herein was, a limited liability company organized and existing under and pursuant to the laws of the State of Delaware with its principal place of business located in the Commonwealth of Pennsylvania.

7. Plaintiff has one member, Capital Foundry, LLC.

8. Capital Foundry, LLC is a Delaware limited liability company with its principal place of business located in Pittsburgh, Pennsylvania and is wholly owned by Woodland Capital Holdings, LLC, a Delaware limited liability company with its principal place of business located in Pittsburgh, Pennsylvania.

9. Woodland Captital Holdings, LLC, has one member, a natural person, who is a citizen of the Commonwealth of Pennsylvania.

10. Quartix is, and all times herein was, a corporation organized and existing under and pursuant to the laws of the State of Delaware with its principal place of business located in North Carolina.

11. Upon information and belief, DGL is, and at all times herein was, a corporation organized and existing under and pursuant to the laws of the State of New York with its principal place of business located at 2045 Lincoln Highway, Edison, New Jersey 08817.

12. Upon information and belief, Zaarafani is an individual who is a citizen of the State of New York.

13. Upon information and belief, Nakash is an individual who is a citizen of the State of New York.

14. Zaarafani and Nakash are each a Guarantor under the Agreement.

15. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendants have complete diversity of citizenship.

16. This Court has subject matter jurisdiction over this action because this Complaint meets the $75,000.00 amount in controversy requirement for diversity jurisdiction under 28 U.S.C. § 1332(a).

17. Venue properly lies in this judicial district because Defendants consented to submit to the personal jurisdiction of this Court under the Agreement.

## FACTUAL BACKGROUND

The Capital Foundry – Quartix Relationship

18. Capital Foundry is a commercial lender providing revolving lines of credit to its borrowers secured by all of the borrower's personal property.

19. Capital Foundry, as lender, and Quartix, as borrower, entered a certain Loan Agreement dated July 13, 2018, as amended from time to time, a copy of which is annexed hereto as **Exhibit A** (the "Loan Agreement").

20. Pursuant to the Loan Agreement, Capital Foundry provided a revolving line of credit (the "Loan") to Quartix in the original maximum amount of up to One Million Dollars, and through a series of amendments as Quartix's business grew, modified the maximum amount up to Seventeen Million Dollars which amount was thereafter gradually reduced.

21. The amount of borrowing made under the Loan was dependent on the value of eligible collateral existing from time to time.

22. In addition, Quartix executed and delivered to Capital Foundry a Security Agreement, dated as of July 9, 2018, a copy of which is annexed hereto as **Exhibit B** (the "Security Agreement"). whereby it granted Capital Foundry a security interest in and to all of Quartix's accounts receivable, inventory, intellectual property, deposit accounts, guaranties, contract rights and more as further described

in the Security Agreement (the "Collateral").

23. On May 4, 2018, Capital Foundry perfected its security interest upon the Collateral by filing a UCC-1 Uniform Commercial Code Financing Statement with the Secretary of State of the State of Delaware under filing number 20183040744, a copy of which is annexed hereto as hereto as **Exhibit C.**

24. Capital Foundry has filed continuation statements from time to time to retain its first priority perfected lien in and to the Collateral.

25. Section 3.07(d) of the Loan Agreement required Quartix to direct its Customers to submit payments to a designated lockbox under the control of Capital Foundry.

26. The Loan Agreement also granted Capital Foundry the "sole right to collect the accounts receivable and to take possession of the Collateral, or both." (Loan Agreement at 3.07(d)).

27. The Loan Agreement also provides that Quartix validly assigned to Capital Foundry, its interest in and to the Agreement, the Guaranty, all obligations thereunder, and all causes of action arising therefrom.

28. Accordingly, Capital Foundry is the lawful owner and holder of the Obligations (defined below) and has standing to enforce the Agreement and the Guaranty.

29. Since on or before September 18, 2025, Quartix has been in default under the Loan Agreement and Capital Foundry has asserted its right under the Loan Agreement to collect Quartix's accounts receivable.

30. The monies owed by DGL to Quartix are accounts receivable of Quartix which were assigned to Capital Foundry as collateral to secure the Loan.

The Quartix-DGL Relationship

31. Quartix maintained a cloud-based supply chain finance platform that, among other things, provided for the electronic exchange of information regarding invoices of suppliers of participating customers and the submission of notices relating to approvals for payment, offers to purchase and sell, and transfers of supplier invoices (the "Platform").

32. In particular, but without limitation, the Platform allowed participating customers

to request that Quartix make advances to them to enable them to pay their invoices based upon the invoice information they supply to Quartix.

33. Customers to whom Quartix made advances, such as DGL, unconditionally agreed to repay those advances on the maturity dates specified on the Platform.

34. DGL executed and delivered to Quartix a Customer Services Agreement, dated May 31, 2022, a copy of which is annexed hereto as **Exhibit D** (the "Agreement")[1].

35. Under the Agreement Quartix financed the payment of DGL accounts payable by having Quartix pay such accounts to DGL's suppliers (the "Advances").

36. Paragraph 4 of the Agreement sets forth:

*"Services Available to Customer. The Customer may at any time use the Platform to take any of the following actions that have been authorized by Quartix and made available to the Customer on the Platform: (i) post Invoices, (ii) approve posted Invoices for payment in whole or in part, (iii) request that the maturity date of any Approved Invoice be extended, (iv) request Advances to pay Approved Invoices, (v) instruct Quartix to pay Approved Invoices, and (vi) employ any other services then available to it on the Platform."*

37. Pursuant to Paragraph 8 of the Agreement,

*"Advances.*
*(a)     Quartix may, at the Customer's request but in Quartix's sole discretion, (i) pay Approved Invoices specified by the Customer or (ii) make advances to the Customer to pay such Approved Invoices (each such payment or advance herein called an "Advance" and the date on which Quartix makes such payment or advance herein called the "Borrowing Date" of such Advance).*

*(b)     Any request that Quartix make an Advance (a "Borrowing Request") shall be made by the Customer on the Platform, in accordance with the Platform Procedures, and shall (i) identify the Approved Invoices the Customer wishes to pay with the proceeds of the requested Advance, (ii) state the amount of the requested Advance (provided that no Advance shall exceed the Approved Amount of the Approved Invoices identified in such Borrowing Request), (iii) accept the interest rate and Maturity Date quoted on the Platform for the requested Advance, and (iv) provide such other information as the Platform may require."*

*See* Agreement ¶8 (a) and (b).

---

[1] Unless otherwise defined herein, all capitalized terms shall have the same meaning as set forth in the Agreement.

38. In connection with the repayment of the Advances by DGL to Quartix, the Agreement further sets forth:

> "(c) Each Advance shall be due and payable on demand and, if no demand is made prior thereto, on the Maturity Date selected by the Customer for such Advance in accordance with the Platform Procedures. **The Customer acknowledges and agrees that it shall** have an absolute, irrevocable, legal, valid and binding obligation to repay each Advance to Quartix on demand or, in the absence of a demand, on its Maturity Date, without any defense, offset or counterclaim of any kind.
>
> (d) The outstanding principal amount of each Advance shall bear interest from the date it is made until it is paid in full at the rate quoted on the Platform and accepted by the Customer when it submitted the Borrowing Request for such Advance. Interest on each Advance shall be payable on the date Quartix demands payment thereof or, in the absence of such demand, on the Maturity Date of such Advance.
>
> (e) Notwithstanding the foregoing, in the event that Customer fails to make any payment in response of principal or interest on any Advance on the date it is due, it shall pay to Quartix, promptly upon demand, interest on the past due amount from its due date until it is paid in full at the default rate specified on the Platform (which rate shall apply after as well as before judgment)."

*See* Agreement ¶¶8 (c)-(e).

39. Paragraph 9(b) of the Agreements, sets forth in pertinent part:

> "The Customer shall pay each Purchased Invoice, and shall repay each Advance, to Quartix, in the case of Purchased Invoices in the currency specified in such invoices and, in the case of Advances, in the currency in which the Advances were made and, in each case, in immediately available funds in accordance with the payment instructions set forth [in the Agreement]."

40. Pursuant to the Agreement the parties, irrevocably and unconditionally, to the fullest extent permitted by applicable law, agreed to the application of New York law, and submitted to the jurisdiction of the Courts of the City, County and State of New York. *See* Agreement ¶ 16.

41. The parties further agreed at paragraph 19 of the Agreement to irrevocably and unconditionally waive, to the fullest extent permitted by applicable law, any objection that they may have to the laying of venue of any action or proceeding arising out of or relating to the Agreement in any Court in the City, County and State of New York. *See* Agreement ¶ 17.

The Guaranty

42. In order to induce Quartix to enter into the Agreement, provide the Customer access to the Platform and provide the services and accommodations specified therein, each of the Guarantors executed and delivered to Quartix that certain Guaranty, annexed to the Agreement dated May 31, 2022, a copy of which is annexed hereto as **Exhibit E** (the "Guaranty").

43. Pursuant to the Guaranty, each of the Guarantors:

> *"irrevocably and unconditionally guarantees to Creditor payment in full when due, whether by acceleration or otherwise, of any and all Obligation Obligations of the Obligors to Creditor."*

44. Each Guarantor's obligations under the Guaranty are joint and several, absolute, unconditional, continuing, and irrevocable, and are not subject to any defense, setoff, counterclaim, or condition precedent, including without limitation notice of acceptance, notice of default, demand, presentment, or the insolvency of the borrower

Defendants' Defaults

45. Pursuant to the Agreement,, Quartix made Advances to or for the benefit of DGL, as guaranteed by each of the Guarantors under the Guaranty.

46. Upon information and belief, Quartix has performed all parts of the Agreement to be performed on Quartix's behalf.

47. According to the Platform, Quartix made Advances to or for the benefit of DGL, which Advances remain unpaid, as follows:

  (a) $499,970.00, on January 01, 2025, which amount was due to be paid by DGL on or before February 13, 2025, but which was extended, from time to time in accordance with the Agreement until August 1, 2025, together with interest thereon;

  (b) $538,120.00, on February 21st, 2025, which amount was due to be paid by DGL on or before march 22nd, 2025, but which was extended, from time to time in accordance with the Agreement until August 1, 2025, together with interest thereon;

(c) $211,946.92, representing the balance owing on the Advance made to DGL on December 31, 2024, in the amount of $499,970.00, which, after an extension was granted by Quartix was due to be paid by DGL on or about August 1, 2025, and for two partial payments were received (on May 6, 2025 and June 4, 2025) which reduced the balance owing to $211,946.92.

48. DGL has failed to repay the Advances in accordance with the Agreement and, as of August 1, 2025, DGL was obligated to Quartix in the amount of $1,362,952.24 (the "Obligations"), inclusive of interest through August 1, 2025.

49. The Platform provides that interest is payable on the Obligations at the rate of 20.78% per annum.

50. Pursuant to the Guaranty, each of the Guarantors, individually, remains unconditionally and irrevocably liable to Quartix for payment in full of the Obligations.

51. The maturity dates by which the repayment of the Advances were due by DGL to Quartix have passed and the amounts due to Quartix remain unpaid and, as such, DGL has breached its obligations due to Quartix under and pursuant to the Agreement (the "Default").

52. On October 23, 2025, Capital Foundry, by its attorney, sent that certain demand notice to Defendants by Federal Express delivery and electronic mail, notifying Defendants of Defendants' Default under the Agreement, totaling $1,362,952.24, consisting of unpaid principal and accrued interest through August 1, 2025, with interest continuing to accrue thereafter at the contractual default rate. *See* **Exhibit F** annexed hereto and made a part hereof (hereafter, the "Demand Notice").

53. The Demand Notice demanded payment of the Obligations.

54. Based upon the proofs of delivery by Federal Express, each of the Defendants received the Demand Notice and each has failed to respond.

55. Defendants have failed and refused to pay the Obligations, the total of which remains due and owing, plus interests, costs and attorneys' fees.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT – THE AGREEMENT

56. Plaintiff repeats and realleges each of the allegations in the preceding paragraphs as though fully set forth at length herein.

57. The Agreement constitutes a valid and binding contract between Quartix and DGL.

58. DGL breached the Agreement by failing and refusing to pay Quartix the Indebtedness.

59. As of August 1, 2025, DGL failed and refused to pay $1,362,952.24 in connection with all amounts due to Quartix under and pursuant to the terms and conditions of the Agreement.

60. Quartix has fully performed its obligations due and owing under the Agreement.

61. As a direct result of DGL's breach of the Agreement, Capital Foundry, as assignee of Quartix has suffered damages in an amount equal to $1,362,952.24, plus interest, costs and attorneys' fees.

62. By reason of the aforesaid, Capital Foundry is entitled to a judgment against DGL in an amount equal to $1,362,952.24, plus interest, costs and attorneys' fees.

## SECOND CAUSE OF ACTION
## BREACH OF CONTRACT – THE GUARANTY

63. Plaintiff repeats and realleges each of the allegations in the preceding paragraphs as though fully set forth at length herein.

64. The Guaranty entered into by each of the Guarantors in connection with the Agreement constitutes a valid and binding contract between each of the Guarantors, as guarantor, and Quartix.

65. As of the date hereof, DGL has failed and refused to pay the Indebtedness due to Quartix or Capital Foundry, as its assignee.

66. Each of the Guarantors, pursuant to the terms of the Guaranty, is liable to Quartix and, in turn, Capital Foundry, as its assignee, in an amount equal to the Obligations.

67. Each of the Guarantors has breached the Guaranty by failing and refusing the Obligations.

68. As a direct result of each of the Guarantors' breach of his Guaranty, Capital Foundry has suffered damages in an amount equal to $1,362,952.24, plus interest, costs and attorneys' fees.

69. By reason of the aforesaid, Capital Foundry is entitled to a judgment against each of the Guarantors in an amount equal to $1,362,952.24, plus interest, costs and attorneys' fees.

## THIRD CAUSE OF ACTION
## UNJUST ENRICHMENT

70. Plaintiff repeats and realleges each of the allegations in the preceding paragraphs as though fully set forth at length herein.

71. This cause of action is pleaded in the alternative, solely in the event that the Agreement or Guaranty is deemed unenforceable in whole or in part.

72. By its conduct described above, Defendants have received a benefit with respect to the advances provided to or for the benefit of DGL.

73. Defendants have been unjustly enriched at the expense of Capital Foundry.

74. Under principles of good conscience, Defendants are jointly and severally liable to Capital Foundry (as assignee of Quartix) for an amount equal to $1,362,952.24, plus interest, costs and attorneys' fees.

75. By reason of the aforesaid, Capital Foundry is entitled to a judgment against Defendants in an amount equal to $1,362,952.24, plus interest, costs and attorneys' fees.

WHEREFORE, Plaintiff respectfully demands judgment against Defendants, jointly and severally, as follows:

i. For an amount equal to $1,362,952.24 for DGL's breach of contract claim in connection with the Agreement, plus interest, costs and attorneys' fees;

ii. For an amount equal to $1,362,952.24 for each of the Guarantors' breach of contract claim in connection with the Guaranty, plus interest, costs and attorneys' fees;

    iii.    For an amount equal to $1,362,952.24 for Capital Foundry's (as assignee of Quartix's) claim for unjust enrichment against the Defendants, plus interest, costs and attorneys' fees; and

    iv.    For such other, further and different relief as this Court may deem to be just and proper.

Dated: January 23, 2026
       Carle Place, New York

**BODNER LAW PLLC**
*Attorneys for Plaintiff*

By: _____
Jeffrey A. Wurst, Esq.
Jonathan S. Bodner, Esq.
55 Cherry Lane, Suite 101
Carle Place, NY 11514
(212) 204-2963
jwurst@bodnerlawpllc.com
jbodner@bodnerlawpllc.com